This was a suit by the administrator de bonis non and the distributees of Meaux Thornton deceased, against the administrator de bonis non of Robert West deceased, and the administrator and legatees of the surety of Robert West as administrator of Meaux Thornton, and the administrator de bonis non, widow, devisees and legatees of George M. West deceased, originally brought in the Circuit court of King William, and removed from thence to the Circuit court of Hanover county. The object of the suit was to redeem certain slaves which the plaintiffs alleged had been mortgaged by Meaux Thornton to Robert West to *Page 178 
secure a debt due from Thornton to West, and to have a settlement of Robert West's administration upon the estate of Meaux Thornton. The pleadings and proofs make the following case:
Meaux Thornton by a deed bearing date the 17th of January 1807, conveyed to Robert West seven slaves by name, and also his interest in a suit pending in the County court of Gloucester against the administrator of John Perrin, to secure to West the sum of £ 102. 10. 6., with interest from 1804, with power to sell as many of the slaves as should be sufficient to pay the debt, upon ten days notice, provided he was not paid within six months out of the proceeds of the suit against Perrin's administrator.
Meaux Thornton seems to have died prior to February 1809, as on the 6th of that month Robert West qualified as his administrator, in the County court of Gloucester, as appeared from the certificate of the clerk of the General court. It does not appear whether West had possession of the slaves mentioned in the mortgage before his qualification as administrator; but it is certain that he removed from the county of Gloucester to the county of Buckingham, taking these slaves with him; and that he held them until his death in 1816. In January 1817, George M. West qualified in the County court of Buckingham, as the executor of Robert West: and these slaves were inventoried by him as the property of his testator's estate; and were so held until 1824, when he died. The unadministered estate of Robert West was then committed to Price Perkins, sheriff of Buckingham county, and these slaves were held by him until 1829, when they were levied on and sold by the marshal of the Richmond Chancery court, under a decree of that Court made in a case therein depending, of Lyons, administrator of Robinson, against Perkins, administrator de bonis non of Robert West. *Page 179 
The present suit was commenced in June 1832. The plaintiffs alleged in their bill the execution of the mortgage, and exhibited a copy thereof certified by John Robinson, clerk of the Circuit court of Henrico. They alleged that Meaux Thornton continued in possession of the slaves until his death in 1809. That West qualified as his administrator and took possession of the slaves, and held them until his death. And they state as the ground of the delay which had occurred in the institution of their suit, that a suit had been brought by John W. Perrin and others against Meaux Thornton in his lifetime, for the recovery of these slaves; that this suit was revived against Robert West as administrator of Thornton, and having been removed from the County court of Gloucester to the Chancery court at Richmond, it had been recently decided in favour of the administrator of Meaux Thornton.
A copy of the record in the case of Perrins against West's administrator and others, was made a part of this case. That was a suit brought in 1803, by the distributees of John Perrin deceased, some of them infants who sued by their next friend, against Meaux Thornton, to recover certain slaves, Mary and her children, which the plaintiffs alleged belonged to the estate of John Perrin; and of which Mary went into the possession of his widow, who afterwards married Meaux Thornton. Thornton answered the bill, and insisted that John Perrin, in his lifetime, never claimed the slave Mary, who had been the property of his wife before her marriage, and that after his death in 1791, Mrs. Perrin held her as her own property, and the slave and her increase had remained in the possession of Mrs. Perrin and of himself since his intermarriage with her, ever since, without any question of his title until this suit was brought. *Page 180 
In April 1809, the death of the defendant, Meaux Thornton, was suggested, and the suit was revived by consent against Robert West as his administrator. He does not appear to have filed an answer, or to have set up any other defence than that set up by Thornton. In 1817, the suit abated as to Robert West, by his death, and was revived against George M. West, as his executor. He filed an answer, in which, after insisting that the plaintiffs had no title to the slaves, he says, that Meaux Thornton, in his lifetime, sold said slaves to Robert West for a full consideration; or that being indebted to Robert West, he mortgaged the slaves to West to secure the payment of the debt. That he was not then acquainted with the precise character of the transaction, but expected to be able at the hearing to explain and prove it to the satisfaction of the Court. That he was then in possession of the slaves as a part of his testator's estate, and in that character claimed them as his property. That if the slaves ever did belong to the estate of John Perrin, the title was lost by lapse of time, and the adverse possession held by Thornton vested the title in him; and that Robert West having purchased them of Thornton, had a just title to them.
The mortgage executed by Meaux Thornton to Robert West in 1808, was filed in that suit. All the other evidence in the cause was upon the question of Mrs. Thornton's title to the slave Mary, who was the mother of the others.
The cause came on to be heard in March 1820, when there was a decree dismissing the bill with costs; and from this decree, there was an appeal to this Court. Whilst the cause was here, George M. West died, and the appeal was revived against Price Perkins, administrator de bonis non,c., of Robert West; and in 1831, the decree was affirmed. *Page 181 
Jane West, the widow of George M. West, and Perkins the administrator de bonis non of Robert West, in their answers, denied all knowledge of the plaintiffs' claim; and Perkins expressly relied upon the lapse of time, the death of all the parties who had any knowledge of the transaction, the fact that the clerk's office of the County court of Gloucester, with all its records, had been burned, and the other circumstances of the case, as a bar to the recovery sought by the plaintiffs.
The Court below directed various accounts, which were taken; and the commissioner reported that there was due from Robert West to Meaux Thornton, after satisfying the mortgage debt, on the 31st of December 1816, 490 dollars 61 cents. That there was due from George M. West, on the 1st of January 1825, for the hires of the mortgaged slaves, 2165 dollars 45 cents of principal, and 431 dollars 5 cents of interest; and that there was due from Perkins, for the hires of these same slaves up to the time they were sold by the marshal, 1000 dollars of principal, and 90 dollars of interest; and that the slaves sold for 1758 dollars.
The cause came on to be finally heard in April 1842, when the Court made a decree in conformity to the report of the commissioner, holding Perkins liable personally, for the hires of the slaves whilst in his possession; and also for the price for which they were sold by the marshal. From this decree, the defendants applied to this Court for an appeal, which was allowed.
The Court is of opinion, that under any aspect of the appellees' claim, they are not entitled to the relief prayed for. The alleged mortgage by Meaux Thornton to Robert West, was executed on the 17th January 1807. When Robert West acquired possession of the slaves, does not distinctly appear. Meaux Thornton having died, Robert West administered on his estate in the County court of Gloucester, in February 1809. It is alleged he took possession of the slaves as administrator, not as mortgagee; but of this allegation, there is no proof. The records of Gloucester County court having been destroyed by fire, no account of his administration appears; and none after such a lapse of time, and the death of the original parties and their immediate representatives, can now be looked for. In the mean time, the slaves were removed by Robert West to another county, where he died. In 1817, his executor, George M. West, administered on his estate, took possession of the slaves as the assets thereof, and died in 1824; and his administratrix, Jane West, having been removed, administration of his estate has been committed to the sheriff. After the death of George M. West, administrationde bonis non of the estate of Robert West, was committed to Price Perkins, sheriff of Buckingham, in November 1824. He took possession of the slaves as part of the unadministered assets of the estate of Robert West, and held them until February 1829, when they were sold as assets of that estate, at the suit of the creditors thereof. On the 13th of June 1832, this suit was instituted, 25 years after the execution of the mortgage, 23 years after the death of Meaux Thornton and administration on his estate, 15 years after the death of Robert West and administration on his estate, 8 years after the death of his executor, and 3 years after the sale of the negroes, as assets of Robert West's estate found in the hands of the sheriff, his administrator *Page 183 de bonis non. The long delay and laches of the appellees in asserting their claim, is not satisfactorily accounted for. The suit of Perrin asserting an adverse claim to the property against Meaux Thornton, does not furnish a sufficient apology. If they had notice of the suit at all, they would have perceived that as early as 1817, George M. West, the executor of Robert West, asserted by his answer, that his testator, Robert West, had a clear and just title to the property; thus setting up, and insisting upon a title adverse to the claim of the appellees. This assertion of an adverse claim should have led to enquiry. Had such enquiry been made, they would have perceived that the executor had made the allegation in good faith: that he had inventoried the slaves as part of the assets of his testator; thus making himself responsible to creditors and distributees for their hires and value. It does not appear when administration de bonis non upon the estate of Meaux Thornton was taken out, or how long it remained unrepresented after the death of Robert West; the fact, if material, should have been shewn by the appellees. But so far as the record discloses, they were all competent to act for themselves at the death of Meaux Thornton; no disability is alleged or shewn. As distributees of Meaux Thornton, they were the proper parties to have sued the administrator for a settlement and distribution; and that is one aspect of their bill. And though the personal representative was the proper party to file the bill to redeem, yet those who claim through him are not relieved from the consequences of their gross laches, if without any valid excuse, they fail to take the proper steps to procure a representative for such a length of time, and until after such a change of parties and circumstances, as to render it doubtful whether any decree can be pronounced without the hazard of injustice. In this case, the assertion of their claim involves the settlement of the administration account of Robert West *Page 184 
on Meaux Thornton's estate, 15 years after the death of the administrator, and after the destruction of the records of the Court by which administration was granted; a settlement of the administration account of George M. West, executor of Robert West, 8 years after his death; an account of the hires and profits of the slaves from 1809, after the death of all the original parties and their immediate representatives, and after the property itself has passed into the hands of bona fide purchasers, and the proceeds arising from the sale have been applied to the payment of the creditors of Robert West's estate.
The Court is therefore of opinion, that upon the ground of adverse claim asserted upon the part of the estate of Robert West, and so long uncontroverted, the laches of the appellees in asserting their claim, and the hazard of injustice to others in going into settlements of estates, and calling for accounts of hires and profits of slaves under the circumstances of this case, the bill of the appellees should have been dismissed.
BALDWIN, J. concurred in so much of the decree as dismissed the bill as to Price Perkins individually, beyond the hires of the slaves whilst in his hands, but dissented from the residue; being of opinion, that the appellees are not precluded from relief by the statute of limitations or lapse of time.
 Decree reversed, and bill dismissed. *Page 185